J. P. WILLIAMS V. THE STATE.

No. 21498. Delivered March 19, 1941.
Reheading Denied May 14, 1941.
Application for Leave to File Second Motion for Rehearing
Overruled (Without Written Opinion) June 4, 1941.

The opinion states the case.

*John J. Watts*, of Crane, and *Clyde E. Thomas*, of Big Spring, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State, on submission.

CHRISTIAN, Judge.

The offense is theft by false pretext; the punishment, confinement in the penitentiary for two years.

The trial was had in Midland County on a change of venue from Andrews County.

In August, 1936, Sam N. Smith, County Clerk of Andrews County, had in his possession thirteen bonds of the City of O'Donnell, which had been purchased by the County of Andrews. These bonds were of the par value of five hundred dollars each. Deciding that he wanted to be relieved of the responsibility of keeping the bonds, Mr. Smith conferred with the members of the commissioners' court relative to the matter. Appellant was present at the time. Thereafter, during the latter part of August, 1936, appellant, who was at the time county attorney of Andrews County, approached Mr. Smith with the request that the bonds be delivered to him. Mr. Smith testified that appellant stated to him that he (appellant) and the county judge were going to Midland and would carry the bonds to the bank at that place. Believing this representation to be true

and that appellant would carry the bonds to the First National Bank of Midland, which was the county depository, for safe-keeping, Smith delivered the bonds to appellant. Shortly thereafter appellant wrote letters to H. C. Burt and Company of Houston offering to sell them the bonds for a stated sum. The company bought the bonds for $1,625.00, appellant receiving the money. According to appellant's confession, he did not deliver the money to Andrews County but converted it to his own use and benefit. A statement in the confession, which was not introduced by the State, but by appellant, was to the effect that Andrews County owed appellant more than the amount he received for the bonds, and had failed to pay him. The testimony of the State was sufficient to warrant the conclusion that such statement was false.

Appellant did not testify.

As we understand the testimony, Mr. Smith was induced to part with the possession of the bonds by the false pretext of appellant that he would carry them to the bank at Midland for safe keeping. Mr. Smith did not part with the title to the bonds. We think the testimony is sufficient to show that at the very time appellant induced Mr. Smith to surrender possession of the bonds to him he (appellant) intended to convert such bonds to his own use. Therefore the State's testimony is deemed sufficient to sustain a conviction of theft under the provisions of Article 1413, P. C., that is, theft by false pretext. Article 1413, P. C., reads as follows:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

See Roe v. State, 144 S. W. (2d) 1104.

Appellant's bills of exception relative to argument of counsel for the State, as qualified by the trial court, fail to reflect error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for rehearing appellant earnestly contends that we erred in our original opinion in holding the evidence sufficient to sustain his conviction of theft by false pretext. We have again read the statement of facts with much care in the light of the appellant's contention but are unable to agree with him. The evidence shows that Andrews County owned the bonds in question and that these bonds had been in the possession of the County Clerk for a long time. He kept them in a drawer of his desk. On one or two occasions the County Clerk urged the Commissioners' Court to place the bonds elsewhere, in a safer and more secure place. Appellant not only had knowledge of this but also knew that the First National Bank of Midland was the county depository. Knowing these facts, appellant, on or about the 25th day of September, 1936, went to the County Clerk and told him that he (appellant) and Judge Underwood (then the County Judge of Andrews County) were going to Midland to take the bonds to the bank, leaving the impression with the County Clerk that they were going to take the bonds to the bank for safekeeping. Upon these representations appellant obtained possession of the bonds from the County Clerk.

The testimony of Judge Underwood strongly indicates that he did not go with the appellant to Midland or that he at any time had any knowledge that appellant intended to obtain possession of the bonds and take them to the bank. From his testimony we quote as follows:

"I retired as County Judge the last day of December, 1938. That was also Mr. Williams' last month, he being succeeded in 1939 by Mr. Beene. * * * Just prior to my retirement from the office of County Judge of Andrews County, I asked Mr. Williams about the City of O'Donnell bonds, where they were, if he knew and he said they were at Midland in the bank."

Mr. Beene testified that appellant, on the 12th day of July, 1939, voluntarily appeared before the grand jury of Andrews County and after being warned in the manner and form provided by statute, stated to the grand jury that he took the

bonds and shipped them with draft attached through the Midland National Bank of Midland, Texas, and received the money in his own account; that he received approximately $1,500.00. The witness testified, among other things, as follows:

"I don't know that the City of O'Donnell bonds were kept in any bank. * * * The only knowledge I have of it is, they were taken to a bank, the Midland National, with draft attached, and asked to be shipped through that bank."

On the 15th of September, 1936, appellant addressed a letter to Mr. H. C. Burt of Houston, Texas, which reads as follows:

"Dear Mr. Burt:

"Replying to your letter with reference to the $6,500.00 O'Donnell Bonds held by this County, I wish to say that I can deliver the bonds at the price quoted by you 25 flat.

"You may send me your shipping orders as per your letter of the 9th inst."

On October 1, 1936, appellant addressed another letter to H. C. Burt & Company, Houston, Texas, which reads as follows:

"In Re *O'Donnell Bonds*

"Gentlemen:

"I was at Midland Tuesday, this week; had had them trace the Bonds, they had a *receipt* showing that they had delivered to the First National Bank, San Antonio, Texas.

"However, they had not received the returns for them, they may have received the money by this time but I have not heard from them to that effect.

"If they have not at this time been paid for, hope that you will see that it is done at once.

"I am, very truly yours,

"J. P. Williams."

The only reasonable conclusion to be drawn from the testimony is that appellant, prior to the time that he obtained possession of the bonds, had formed the intent to obtain them, sell them and appropriate the money to his own use and benefit. All the facts and circumstances which transpired at the time of, as well as prior and subsequent thereto, show that he

never did have any intention of taking the bonds to the bank for safekeeping but to take them to the bank, draw a draft on the party to whom he had tentatively sold them, and then instructed the bank to forward them to the party designated by him. That he contemplated selling the bonds prior to the time he obtained possession of them is shown by his letter to H. C. Burt & Company. Consequently, the means employed by him, although appearing upon their face to have been made in good faith and to be true, were in fact simulated and shown not to have been made in good faith but as a means resorted to for the purpose of obtaining possession of the bonds so that he might accomplish the object of his fraudulent purpose. So far as this record shows, appellant was never the agent of the Commissioners' Court. He was never authorized to dispose of these bonds and, therefore, it cannot be said that he was an agent of the county. It is true that appellant obtained possession of the bonds apparently in a lawful manner, but the means employed do not take the case out of the category of the offense of theft by false pretext. In support of our contention, in addition to the cases cited in our original opinion, we refer to the case of DeBlanc v. State, 118 Tex. Cr. R. 628.

Appellant's next contention is that if the evidence shows that he sold the bonds and converted the money to his own use and benefit prior to his re-election as County Attorney in 1936, that, therefore, he cannot be prosecuted for the offense so charged, because Article 5986 of the Revised Civil Statutes, relieves of the prosecution. The article referred to reads as follows:

"No officer shall be prosecuted or removed from office for any act he may have committed prior to his election to office."

To hold that a person running for office might commit murder, burglary, theft, robbery, rape or any of those offenses and thereafter be elected to office would be relieved from punishment is the most monstrous proposition that the writer of this opinion has ever heard advanced in justification of any of such offenses. To so hold would be contrary, not only to every law on the subject but also to public policy. We think that the Legislature, in the enactment of said law, meant that the same should apply to any offense committed relating to misfeasance of office and certainly not to make him immune to punishment for any other offense. We therefore overrule appellant's contention.

Appellant next contends that our holding in the present case relative to the argument of the District Attorney complained of is in conflict with our decision in the case of Wash v. State, 63 S. W. (2d) 1035. Appellant's bill of exception is qualified by the trial court and he accepted the bill with the qualification. Therefore, he is bound by the same. However, we think that there is a vast difference in the argument complained of in the present instance and that which was made in the Wash case, supra. The import of the language in the Wash case was much more vicious and carried to the minds of the jury quite a different impression from that in the present case. In that case the District Attorney in effect told the jury that in cases in which he deemed the defendant was entitled to a suspended sentence under the law, he always recommended it, but that when he declined to recommend it, the accused was not entitled to it. No such argument was made in the present case and no such construction can reasonably be placed thereon.

Believing that the case was properly disposed of on the original submission, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.